Carolyn Hunt Cottrell (SBN 158253)
Ori Edelstein (SBN 268145)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com

Attorneys for Plaintiff and the Putative Collective

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUDITH ZISSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a legal subdivision of the State of California,<br><br>Defendant. | Case No.: _____<br><br>**COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT (FLSA)**<br><br>**DEMAND FOR JURY TRIAL** |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Judith Zissa ("Plaintiff"), individually and on behalf of all others similarly situated (the "putative Collective"), complains and alleges as follows:

### I.     INTRODUCTION

1. Plaintiff brings this collective action on behalf of herself and other similarly situated individuals who have worked for the County of Los Angeles, Department of Children and Family Services (the "County" or "DCFS"), as Children's Social Workers ("CSWs"). Plaintiff challenges the County's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").

2. Plaintiff and members of the putative Collective are current and former non-exempt CSWs. They work tirelessly to make sure that children are safe in Los Angeles County. They investigate allegations of abuse, develop case plans to ensure that children are safe in their homes, monitor children and families to ensure health, safety, and compliance with case plans, arrange and facilitate placements outside the home, supervise parental interactions, and complete paperwork, case notes, and court reports.

3. Plaintiff and members of the putative Collective work long hours performing these important duties. They are scheduled to work 40 hours per week, but they often work up to 50 hours per week and even more. Caseloads are assigned on operational needs, and not on a realistic assessment of how much work a CSW can handle. The burdens of the heavy caseloads are magnified by the important and sensitive nature of the work. Plaintiff and members of the putative Collective are required to deal with emergency situations in the field in which children's safety is at issue. Other, more routine, visits with families take place outside of scheduled work hours, including on weekends. Los Angeles-area traffic invariably increases time spent in the field, traveling between home visits. Required court reports and case notes are finished at night and on the weekends.

4. At the same time, DCFS maintains and enforces strict deadlines and productivity requirements. CSWs are required to complete all visits with assigned children and families and documentation within certain timeframes. Moreover, DCFS cases are often tied to court proceedings, and reports and other court filings must be made within legally required deadlines. If DCFS misses

the deadline, the Department may be sanctioned by the court. DCFS then places the blame on the assigned CSW, noting the sanction in their personnel file and using it against the CSW in performance evaluation and promotion decisions. If the CSW does not meet the productivity standards, or if they miss deadlines, they face write-ups and other repercussions, up to termination.

5. Faced with the demands of heavy caseloads, providing the required level of support to children, DCFS's productivity requirements, and rigid deadlines, CSWs routinely work more than their scheduled hours.

6. However, DCFS and its managers make it impossible for CSWs to obtain pay for the extra work. As a general rule, overtime must be pre-approved by the CSW's manager. The CSW must complete a County form and obtain manager approval before working the extra time. However, the process is time-consuming and cumbersome, and requests are met with refusals and resistance from DCFS.

7. DCFS managers regularly refuse overtime requests by asking that CSWs "flex" their time – working more than their scheduled hours when they have a heavy workweek, and making up for it by working less than their scheduled hours in other weeks. If they request overtime, CSWs are questioned and even belittled by DCFS managers for not completing the job within the scheduled hours. Due to budgetary concerns, overtime hours are closely scrutinized, managers are evaluated on their ability to cut down overtime, and requests for overtime are widely disfavored. CSWs fear negative repercussions for simply requesting overtime pre-approval. As a result of these policies, practices, and procedures, DCFS denies, discourages and suppresses CSW requests for overtime pre-approval.

8. Moreover, work beyond scheduled hours cannot always be predicted, and the required approval often cannot be obtained in advance. CSWs work with children and families, and the real-life needs of these community members do not adhere to a standard work schedule. The CSWs' work is dynamic and unpredictable, and DCFS requires CSWs to work at any time necessary to get the job done, including on nights and weekends. CSWs work on an emergency basis to evaluate and monitor children, arrange alternative placements when necessary, and perform numerous other services to

ensure that kids are safe. Visits go longer than planned, especially when families are in trouble. However, DCFS policy and practice is to deny overtime requests submitted after the work has been completed on the very basis that the request was not submitted for pre-approval. The CSWs also face being written up for working overtime that was not pre-approved pursuant to DCFS policy. Again, managers disfavor these requests and CSWs fear what will happen if they make them. As a result of these policies, practices, and procedures, DCFS denies, discourages and suppresses CSW requests for overtime approval after the work has been completed.

9. With the countervailing pressures of heavy caseloads, providing the required level of support, DCFS's productivity requirements, and rigid deadlines on the one hand, and DCFS' denial, discouragement, and suppression of CSW requests for overtime approval on the other hand, the CSWs work extra hours to perform their jobs at the required level and are unable to obtain payment for the extra time. DCFS is long aware that the CSWs work more than their scheduled hours but are unable to claim and obtain pay for all hours worked. Nonetheless, DCFS requires, suffers and/or permits Plaintiff and members of the putative Collective to work off-the-clock and without proper overtime compensation.

10. As a result of these policies, practices, and procedures, Plaintiff and members of the putative Collective are not paid for all hours worked and not paid proper overtime in violation of the FLSA. DCFS requires, suffers and/or permits Plaintiff and members of the putative Collective to work in excess of 40 hours per week, but fails to provide a realistic and feasible means of obtaining pay for the extra work. As these unpaid hours are typically worked in excess of 40 hours per week, they should be paid at overtime rates under the FLSA.

11. As a result of these violations, Plaintiff seeks compensation, damages, penalties, and interest to the full extent permitted by the FLSA.

12. Plaintiff seeks full compensation on behalf of herself and all others similarly situated for all unpaid wages, including overtime. Plaintiff also seeks declaratory, equitable, and injunctive relief, including restitution. Finally, Plaintiff seeks reasonable attorneys' fees and costs under the FLSA, as described herein.

## II.    VENUE AND JURISDICTION

13. The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b).

14. This Court has federal question jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA.

15. Venue is proper under 28 U.S.C. §1391, because the County employs Plaintiff and members of the putative Collective and transacts business in this Judicial District, and a substantial part of the acts and/or omissions giving rise to the claims occurred in this District.

## III.    PARTIES

16. Plaintiff and members of the putative Collective are current and former CSWs who worked for DCFS, including the following job classifications: Children's Social Worker Trainees, Children's Social Worker I, Children's Social Worker II, and Children's Social Worker III.

17. Plaintiff is an individual over the age of eighteen, and at all times mentioned in this Complaint was a resident of the State of California. Plaintiff has been employed by DCFS as a CSW from September 2014 until the present.

18. County is a legal subdivision of the State of California, pursuant to Article 11, Section 1(a) of the California Constitution, and pursuant to Section 23002 of the California Government Code.

19. DCFS is a department within County that is responsible for ensuring the safety and welfare of children in Los Angeles County. According to its Mission, DCFS practices a uniform service delivery model that measurably improves child safety, permanency, and access to effective and caring services. Plaintiff is informed, believes, and thereon alleges that, as of 2016, DCFS had over 8,800 staff members and served approximately 35,000 children per day. Plaintiff is informed, believes, and thereon alleges that, as of 2015, DCFS had over 4,000 employees working in CSW job classifications.

20. At all relevant times, County has employed workers under the laws of the United States, as well as within this judicial district. At all relevant times, County has been Plaintiff's "employer" within the meaning of the FLSA.

## IV.  FACTUAL ALLEGATIONS

21. DCFS provides child welfare services in Los Angeles County. It is the largest child protective service agency in the nation, handling 150,000 child safety investigations involving 90,000 families each year.

22. DCFS employs CSWs to perform the required fieldwork, support, planning, and reporting to ensure that children are safe and in stable, caring homes, and that families are complying with case plans and court-ordered requirements.

23. Employees in the CSW classification work in varying grades, including Children's Social Worker Trainee, Children's Social Worker I, Children's Social Worker II, and Children's Social Worker III. Grading within the classification is determined by education and experience, with the higher grades typically requiring more experience or a Master's Degree or higher in social work or therapy.

24. The CSW classifications are FLSA-covered positions. CSWs are paid to work a 40 hour workweek, at hourly amounts between approximately $25 and $35 per hour. They are paid a fixed salary on a semi-monthly basis, based on the underlying hourly amount.

25. CSWs are scheduled to work 40 hours per week. They agree with their managers on a Schedule Agreement, which typically has the CSW working an eight hour day on a standard five day a week schedule.

26. CSWs provide services including but not limited to emergency response, continuing case management, and placements of children. In emergency response, CSWs investigate recent claims of child abuse, neglect, and other referrals. CSWs investigate the claim from the ground up, going into the field to meet with alleged victims and their families to investigate and substantiate the allegations. They spend large amounts of time with children to make sure they are safe. They also request and review police reports, background checks, safety assessments, and all other relevant records. The investigations are lengthy and time consuming.

27. In addition, DCFS requires the CSW to record all investigative interactions in detailed case notes, and to prepare court reports to assist in criminal and family court adjudications.

28. DCFS requires the CSWs to meet court-ordered deadlines for filing court reports and other documents, and to meet internal deadlines for completing visits with children, case reports, and completion of the investigation. CSWs also handle continuing services for families that are in the system. In this phase, CSWs monitor children and families to evaluate child welfare and detect any ongoing abuse or neglect issues. CSWs work with the family to ensure compliance with the case plan, which often includes domestic violence classes, counseling, drug treatment, and drug and alcohol testing. Again, DCFS requires the CSW to record all interactions in detailed case notes, and to prepare court reports to assist in criminal and family court adjudications. DCFS requires the CSWs to meet court-ordered deadlines for filing court reports and other documents, and to meet internal deadlines for completing visits with children and case reports.

29. CSWs also work with children and families to arrange placements in stable, supportive environments, including foster care, when the present living situation is untenable. CSWs are required to locate suitable foster-care and other alternative placements for children, which is time-consuming and often difficult. The CSWs then spend large amounts of time arranging the logistics for alternative placements, completing voluminous paperwork, and even transporting children to these placements in their own vehicles.

30. Additionally, CSWs help to re-unite and monitor children and families after a period of placement outside the home is completed.

31. DCFS assigns caseloads to the CSWs based on operational needs, within the budgetary constraints faced by local governments in California. This results in DCFS assigning caseloads that exceed what CSWs can realistically and feasibly handle in the 40 hour workweek for which they are paid.

32. The CSWs' work is time-intensive and critical. In their assignments, CSWs spend large amounts of time meeting with and evaluating children. DCFS requires CSWs to travel to the child's location and meet with the child for however long it takes for the CSW to evaluate the child's welfare and obtain the required information. In Los Angeles County, traveling to these meetings is no small

feat, and traffic delays regularly add on to the daily work time for CSWs. DCFS requires CSWs to use their own vehicles to commute to locations in the field.

33. Urgent issues regularly arise in the caseloads of CSWs. CSWs work with families, and as problems and difficulties arise, DCFS requires CSWs to spend additional time during visits to make sure that the children are safe. When children and families are struggling, CSWs have to spend more time with the families. When serious, high-priority allegations arise, such as sexual assault allegations, DCFS requires the CSW to immediately meet with the child.

34. DCFS also requires the CSWs to complete large amounts of reports, case notes, and other documentation as part of their job duties. The CSWs routinely work cases that are linked to criminal and family adjudications in the Los Angeles County courts. DCFS requires the CSWs to draft court reports that are used in judicial decision making, and to complete detailed case notes, foster care paperwork, and voluminous other documents.

35. DCFS requires the CSWs to complete and submit court reports so that they are timely filed according to court deadlines. If DCFS misses a court deadline, it can be sanctioned by the courts for the failure. When this happens, DCFS notes the sanction in the CSW's personnel file, and it can be used negatively in performance evaluations, promotions, and other employment decisions.

36. In all aspects of their work, DCFS requires the CSWs to meet with and provide services to the children and families according to DCFS and court-ordered deadlines. Additionally, DCFS imposes productivity requirements on the CSWs. Under these requirements, the CSWs are evaluated upon how many cases they complete and whether they complete their visits with children, investigations, court reports, and other documentation within the required timeframes.

37. If a CSW fails to meet with a child during the required timeframe, which can vary depending on the status of the case, DCFS will discipline the CSW with write-ups and ultimately termination. Likewise, DCFS disciplines CSWs that fail to complete reports, case notes, and other documents within DCFS's required timelines.

38. Faced with the demands of heavy caseloads, providing the required level of support to children, DCFS's productivity requirements, and rigid deadlines, CSWs routinely work more than

their scheduled 40 hours per week. Plaintiff has routinely worked 50 hours per week, and even more, in performance of her duties for DCFS. Plaintiff is informed, believes, and thereon alleges that in the typical workweek, other CSWs work well in excess of 40 hours per week. CSWs complete home visits, court reports, case notes, and other assignments at night, on the weekend, on holidays and days off, and at other times beyond their scheduled hours.

39. However, DCFS pays CSWs based on the standard 40 hours of work per week, and DCFS and its managers make it impossible for CSWs to obtain pay for the extra work.

40. Under DCFS policy, overtime can generally be worked only when it is pre-approved by the CSW's manager. The CSW must complete a County form specifying the number of overtime hours requested and other information, to be completed and signed in advance by the CSW's manager. Thus, CSWs must get authorization, complete the form, and get the required signature before working the extra time. Failure to do so is a violation of DCFS policy.

41. The overtime pre-approval process is time-consuming and cumbersome. Given the dynamic and often urgent nature of the work, the difficulty in predicting when extra hours will be required, and the requirement of a hard copy form and wet signature from the DCFS manager the pre-approval process is designed by DCFS to limit the amount of approved, and therefore paid, overtime.

42. Even when CSWs know in advance that they will have to work extra hours, their requests for overtime are regularly denied. DCFS managers routinely deny overtime requests by telling the CSWs to "flex" their time instead of pursuing an overtime request. Under this "flex" approach, the CSW works more than the scheduled hours in a given week, without compensation for the extra time. Supposedly, the CSW will then work less than scheduled hours in some other week(s) to make up for the work performed off-the-clock in the "heavy" week.

43. Under the "flex" approach, extra time worked routinely goes uncompensated. With the intense workload, deadlines, and productivity requirements, there are insufficient opportunities to make up for the extra time worked in the "heavy" workweeks. Moreover, DCFS fails to pay overtime on hours worked above 40 in the "heavy" weeks.

44. DCFS also refuses and discourages overtime pre-approval requests on the basis that the CSW should be able to complete their assigned caseload within the scheduled 40 hours per week. CSWs that request overtime are routinely belittled and questioned by DCFS managers as to why they cannot get their work done within the 40 hours. DCFS managers tell the CSWs that they should do their jobs differently so that they do not have to request overtime. However, DCFS does not offer relief from the excessive workload and invariably requires CSWs to meet its deadlines.

45. DCFS carefully scrutinizes overtime approvals, and evaluates managers on their ability to keep overtime down. This incentivizes and pressures DCFS managers to refuse and discourage overtime requests from CSWs. Plaintiff, and upon information and belief, other CSWs, feared that their managers would react negatively to overtime pre-approval requests, and that they could face any number of repercussions, from unfavorable assignments to close scrutiny of their work to demotions and termination.

46. Moreover, DCFS is aware that work beyond scheduled hours cannot always be predicted, and the required overtime approval often cannot be obtained in advance. However, DCFS policy and practice is to deny overtime requests submitted after the fact on the very basis that they were not submitted for pre-approval. Under DCFS policy, CSWs face being written up because they have worked overtime that was not pre-approved. Thus, even with the crucial and dynamic nature of the work, CSWs must risk a write up if they attempt to get paid for overtime that was not pre-approved. Such requests are also denied by DCFS managers with instructions for the CSWs to "flex" their time. Again, managers disfavor these requests and CSWs fear what will happen if they make them.

47. With the countervailing pressures of heavy caseloads, providing the required level of support, DCFS's productivity requirements, and rigid deadlines on the one hand, and DCFS' denial, discouragement, and suppression of CSW requests for overtime approval on the other hand, the CSWs work extra hours to perform their jobs at the level required by DCFS and are unable to obtain payment for the extra time. Plaintiff and members of the putative Collective routinely work significant amounts of time off-the-clock and without proper overtime compensation.

48. DCFS is long aware that the CSWs work more than their scheduled hours but are unable to claim and obtain pay for all hours worked, including from previous FLSA litigation. Nonetheless, DCFS requires, suffers and/or permits Plaintiff and members of the putative Collective to work off-the-clock and without proper overtime compensation.

49. As a result of these policies, practices, and procedures, Plaintiff and members of the putative Collective are not paid for all hours worked and not paid proper overtime in violation of the FLSA. DCFS requires, suffers and/or permits Plaintiff and members of the putative Collective to work in excess of their weekly scheduled hours, but only pays them for the scheduled hours and fails to provide a realistic and feasible means of obtaining pay for the extra work. As these unpaid hours are typically worked in excess of 40 hours per week, the off-the-clock work should be paid at overtime rates under the FLSA.

50. Thus, DCFS fails to pay Plaintiff and members of the putative Collective for all hours worked and overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek.

51. Plaintiff is informed, believes, and thereon alleges that DCFS's policies and practices have at all relevant times been similar for CSWs, regardless of their assigned location within Los Angeles County. DCFS's unlawful conduct has been widespread, repeated, and consistent throughout its work locations. DCFS knew or should have known that its policies and practices have been unlawful and unfair.

52. DCFS's conduct was willful, carried out in bad faith, and caused significant damages to CSWs in an amount to be determined at trial.

## V.   COLLECTIVE ALLEGATIONS

53. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

54. Plaintiff brings her claims for failing to pay Plaintiff and Collective members for all hours worked, failing to pay overtime compensation for all hours worked over 40 hours per week,

1 liquidated damages, and attorneys' fees and costs as a collective action pursuant to 29 U.S.C. § 216(b).
2 The FLSA Collective that Plaintiff seeks to represent is defined as follows:

> All current and former non-exempt employees including but not limited to Children's Social Workers at all levels and Children's Social Worker Trainees who worked for DCFS at any time beginning three years before the filing of this Complaint.

55. Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

56. The Collective members are similarly situated, as they have substantially similar job duties and requirements and were subject to a common policy, practice, or plan that required them to perform work without compensation and required them to perform work at an unlawfully reduced payment rate, in violation of the FLSA.

57. Plaintiff is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

58. Plaintiff will fairly and adequately represent and protect the interests of Collective members. Plaintiff has retained counsel competent and experienced in employment and FLSA collective action litigation.

59. The similarly situated Collective members are known to DCFS, are readily identifiable, and may be located through DCFS records. These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, and attorneys' fees and costs under the FLSA.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201,** *et seq.*
**FAILURE TO COMPENSATE FOR ALL HOURS WORKED**

60. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

61. At all times relevant to this action, DCFS has engaged, and continues to engage, in a policy, pattern, or practice of requiring or permitting the Plaintiff and the putative Collective to perform work without compensation, in the form of spending time and conducting activities for the benefit of DCFS. In particular, DCFS requires that Plaintiff and the putative Collective regularly work in excess of their scheduled weekly hours, but pays compensation to Plaintiff and the putative Collective based on their scheduled weekly hours (typically 40 per week), and makes it impossible for them to obtain pay for all of the hours that they actually worked.

62. At all times material herein, Plaintiff and the putative Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

63. DCFS is a covered employer required to comply with the FLSA's mandates.

64. The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation at not less than one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a workweek.  29 U.S.C. § 207(a)(1).

65. DCFS has violated the FLSA with respect to Plaintiff and the putative Collective, by, *inter alia*, failing to compensate Plaintiff and the putative Collective for all hours worked.

66. Plaintiff and the putative Collective are victims of uniform and employer-wide compensation policies that violate the FLSA. These uniform policies have been applied to current and former non-exempt CSWs.

67. DCFS has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the putative Collective. Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment.  29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5).

68. 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

69. DCFS has failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and the putative Collective comprehensive statements showing the hours they actually worked during the relevant time period.

70. Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate." *Id.*

71. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). DCFS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Plaintiff and the putative Collective are therefore entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

72. Plaintiff, on behalf of herself and the putative Collective, seeks damages in the amount of the respective unpaid hours worked, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

73. Plaintiff, on behalf of herself and the putative Collective, seeks recovery of her attorneys' fees and costs of action from DCFS, as provided by the FLSA, 29 U.S.C. § 216(b).

74. Wherefore, Plaintiff and the putative Collective request relief as hereinafter provided.

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201,** *et seq.*
**FAILURE TO PAY OVERTIME WAGES**

75. Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

76. At all times relevant to this action, DCFS has engaged, and continues to engage, in a policy, pattern, or practice of requiring or permitting Plaintiff and the putative Collective to perform

work in excess of 40 hours in a workweek without overtime compensation at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of 40 hours.

77. The FLSA requires that covered employees receive overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a work week.  29 U.S.C. § 207(a)(1).

78. DCFS has violated the FLSA with respect to Plaintiff and the putative Collective, by, *inter alia,* failing to compensate Plaintiff and the putative Collective at the legally mandated overtime premium rate for such work.

79. DCFS has also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective. 29 U.S.C. § 211(c).

80. Plaintiff and the Collective are victims of uniform and employer-wide compensation policies that violate the FLSA. These uniform policies have been applied to current and former non-exempt CSWs

81. Plaintiff and the putative Collective are entitled to recover an award in the amount of their unpaid overtime compensation.  Plaintiff and the putative Collective are entitled to recover an additional award of liquidated damages in an amount equal to the amount of unpaid overtime pay, and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

82. Employers subject to the FLSA must "make, keep, and preserve" accurate records of all hours worked and the wages, hours, and other conditions and practices of employment. 29 U.S.C. § 211(c). It is unlawful for any person to violate § 211(c). 29 U.S.C. § 215(a)(5).

83. 29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

84. DCFS has failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and the putative Collective comprehensive statements showing the hours they worked during the relevant time period.

85. Where an employer's records are inaccurate or inadequate, employees need only produce sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference in order to prove they were improperly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). If an employer is unable to rebut the reasonableness of this inference, the court may award damages to the employee, even if the result "be only approximate." *Id*.

86. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). DCFS knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Plaintiff and the putative Collective are therefore entitled to all damages owed for the limitations period beginning three years preceding the filing of this Complaint, plus periods of equitable tolling.

87. Plaintiff, on behalf of herself and the putative Collective, seeks damages in the amount of the unpaid overtime wages plus an additional equal amount in liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

88. Plaintiff, on behalf of herself and the putative Collective, seeks recovery of her attorneys' fees and costs of action from DCFS, as provided by the FLSA, 29 U.S.C. § 216(b).

89. Wherefore, Plaintiff and the putative Collective request relief as hereinafter provided.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative Collective she seeks to represent in this action, requests the following relief:

a) For an order certifying that all Counts in this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the Collective, apprising them of the pendency of this action, and permitting them to assert their FLSA claims;

b) For an order equitably tolling the statute of limitations for the potential members of the Collective;

    c)    For an order awarding Plaintiff and the Collective compensatory and statutory damages (including liquidated damages), including lost wages, earnings, and all other sums of money owed to Plaintiff and members of the Collective, together with interest on these amounts, according to proof;

    d)    For an order directing DCFS to identify, locate and restore to all current and former CSWs the restitution they are due for lost wages, earnings, and other sums of money, together with interest on these amounts;

    e)    For a declaratory judgment that DCFS has willfully violated the FLSA and public policy as alleged herein;

    f)    For preliminary, permanent, and mandatory injunctive relief prohibiting DCFS, its officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

    g)    For pre- and post-judgment interest;

    h)    For an award of reasonable attorneys' fees as provided by the FLSA;

    i)    For all costs of suit; and

    j)    For such other and further relief as this Court deems just and proper

Dated:  December 6, 2018

Respectfully submitted,

*/s/ Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell
Ori Edelstein

SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Attorneys for Plaintiff and the Putative Collective

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

Dated: December 6, 2018

Respectfully submitted,

*/s/ Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell
Ori Edelstein

SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Attorneys for Plaintiff and the Putative Collective