JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JUDITH ZISSA, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES,<br><br>　　　　　Defendant. | Case No.: CV 18-10174-CJC (JDEx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL OF FLSA COLLECTIVE ACTION [Dkt. 149] |

## I. INTRODUCTION & BACKGROUND

In this conditionally-certified collective action filed on December 6, 2018, Plaintiff Judith Zissa alleges that Defendant County of Los Angeles violated the Fair Labor Standards Act by denying full compensation for overtime hours. (Dkt. 1 [Complaint, hereinafter "Compl."].) She and the other opt-in plaintiffs ("Opt-In Plaintiffs" or "Collective Members") are Children's Social Workers ("CSWs") employed by the Los Angeles Department of Children and Family Services ("DCFS"). (*Id.* ¶ 21.) Plaintiff

alleges that many CSWs had to work more than 40 hours per week because DCFS assigns CSWs more work than they can handle during a 40-hour work week, and disciplines CSWs who do not complete the work they are assigned within rigid deadlines. (*Id.* ¶¶ 31, 36–38.)  Although DCFS' written policy requires it to compensate CSWs for all overtime work, Plaintiff alleges it failed to do so in practice.  (*Id.* ¶ 31.)  She asserts claims under the Fair Labor Standards Act ("FLSA," 29 U.S.C. §§ 201 *et seq*.) for failure to compensate for all hours worked and failure to pay overtime wages.  (*Id.* ¶¶ 60–89.)

On September 20, 2019, the Court conditionally certified a collective of "[a]ll Children's Social Workers and Children's Social Worker Trainees who worked for DCFS at any time from December 6, 2015 to the present."  (Dkt. 39 at 10.)  Notice of the lawsuit was then mailed to 5,714 potential collective members.  (Dkt. 118-2 [Declaration of Michael Campbell] ¶ 3.)  720 CSWs opted in to the lawsuit.  (Dkt. 149 [Motion for Approval of FLSA Collective Action Settlement, hereinafter "Mot."] at 3.)

After almost three years of intense litigation, including individual and collective discovery, depositions, conditional certification, other motion practice, and extensive arm's-length negotiations between counsel, the parties have reached a settlement. (Dkt. 149-1, Ex. 1 [Joint Stipulation and Settlement of FLSA Collective Action, hereinafter "Settlement Agreement"].)  The settlement provides for a total non-reversionary fund of $2,350,000 to be used to pay class members, employee-side taxes arising from the payments to class members, attorney fees of $775,500 and costs of $100,000, estimated settlement administration costs of $20,000, and incentive awards of $15,000 for Plaintiff Judith Zissa and $10,000 for Opt-In Plaintiff Jesus Gonzales.  (*See id*. at 4 ¶ L; Mot. at 1, 5–6.)  The agreement provides an average recovery of approximately $1,974 per Collective Member, with the actual payment depending on the number of weeks the Collective Member worked.  (Settlement Agreement at 9 § VII; Mot. at 1, 6.)

The settlement was reviewed by the Los Angeles County Claims Board and a group of Board Deputies, and then by the Los Angeles County Board of Supervisors. The Claims Board and Board Deputies approved the settlement on October 14, 2021, and the Board of Supervisors approved the settlement on November 4, 2021. (Mot. at 5.) The County signed the agreement on November 4, 2021. (*Id.*)

Now before the Court is Plaintiff's unopposed motion for approval of the Settlement Agreement. (Dkt. 149.) For the following reasons, the motion is **GRANTED IN SUBSTANTIAL PART**.

## II. LEGAL STANDARD

The Fair Labor Standards Act ("FLSA") was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). It requires, among other things, that employers pay their employees time and one-half for work exceeding 40 hours per week. *See* 29 U.S.C. § 207(a)(1).

Employees may not settle and release FLSA claims against an employer without the approval of either the Secretary of Labor or a district court. *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015); *see* 29 U.S.C. §§ 216(b), (c). The Ninth Circuit has not set forth specific criteria for courts to consider when evaluating a FLSA settlement. Accordingly, courts in the Ninth Circuit frequently rely on the Eleventh Circuit's standard in *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See, e.g.*, *McClure v. Waveland Servs., Inc.*, 2021 WL 5204151, at *2 (E.D. Cal. Nov. 9, 2021); *Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *3 (N.D. Cal. Sept. 10, 2021); *Pike v. Cty. of San Bernardino*, 2019 WL 8138439, at *2 (C.D. Cal. Nov. 25, 2019); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, 2016 WL 153266, at *3

(N.D. Cal. Jan. 13, 2016). Under that standard, a court may not approve a FLSA settlement unless (1) the employee's claim involves a "bona fide dispute" over FLSA liability, and (2) the settlement is a fair and reasonable resolution of that dispute. *Lynn's Food Stores*, 679 F.2d at 1353.

## III. DISCUSSION

### A. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018); *see Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1184 (E.D. Cal. 2018); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1174 (S.D. Cal. 2016).

Plaintiff's claims involve a bona fide dispute over whether Defendant violated the FLSA by failing to provide full compensation for overtime hours. The parties have conducted a thorough investigation of Plaintiff's claims through discovery, including numerous depositions. (Mot. at 8.) The Court has ruled on a vigorously opposed conditional certification motion, three motions to compel discovery (two filed by Plaintiff and one filed by Defendant), and a motion for default judgment filed by Defendant. (*Id.*) After all of this litigation, the parties still dispute issues including whether Plaintiff and the Opt-in Plaintiffs actually performed any off-the-clock work, how much off-the-clock work they performed, whether they could prove they performed such work, whether the *de minimis* doctrine forecloses their recovery for such work, and whether they could prove that Defendant acted willfully. (*Id.*) In sum, there are "legitimate questions about the existence and extent of [D]efendant's FLSA liability." *Jennings*, 2018 WL 4773057, at *4.

### B. Fair and Reasonable Resolution

The Court next considers whether the Settlement Agreement reflects a fair and reasonable resolution of Plaintiff and the Opt-In Plaintiffs' claims. In making this determination, courts "often apply factors for assessing a proposed class action settlement pursuant to Federal Rule of Civil Procedure 23," while "recogniz[ing] that some of the Rule 23 factors do not apply because of the inherent differences between class actions and FLSA actions." *Dashiell v. Cty. of Riverside*, 2018 WL 3629915, at *2 (C.D. Cal. July 19, 2018). Under Federal Rule of Civil Procedure 23(e)(2), a proposed settlement must be "fair, reasonable, and adequate." In considering whether this standard is met, courts consider whether (A) the class representatives and class counsel have adequately represented the class, (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A–D).

Because applying only the Rule 23 factors "runs the risk of not giving due weight to the policy purposes behind the FLSA," district courts in this circuit have also "adopted a totality of circumstances approach that emphasizes the context of the case and the unique importance of the substantive labor rights involved." *Selk*, 159 F. Supp. 3d at 1173. This approach considers many of the factors relevant to Rule 23 class action settlements, "but adjusts or departs from those factors when necessary to account for the labor rights at issue." *Id*. The factors courts consider are (1) the plaintiff's range of possible recovery, (2) the stage of proceedings and amount of discovery completed, (3) the seriousness of the litigation risks faced by the parties, (4) the scope of any release provision in the settlement agreement, (5) the experience and views of counsel and the opinion of participating plaintiffs, and (6) the possibility of fraud or collusion. *Id*. Ultimately, the Court must be "satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Kerzich*, 335 F. Supp. 3d at 1185

(quoting *Selk*, 159 F. Supp. 3d at 1173). Here, the Rule 23 factors and the totality of the circumstances support approval of the Settlement Agreement in substantial part.

1. Rule 23

    a. Adequate Representation

First, the class representatives and class counsel have adequately represented the class. *See* Fed. R. Civ. P. 23(e)(2)(A). Adequacy of representation requires that the class representatives (1) have no interests antagonistic to the interests of the class and (2) are represented by counsel that is capable of vigorously prosecuting their interests. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 618 (N.D. Cal. 2015). Here, there is no indication that Plaintiff has any interest antagonistic to the interests of the class. And Plaintiff and the collective are represented by counsel that is capable of, and has, vigorously prosecuted their interests. Counsel for Plaintiff and the collective has nearly three decades of experience litigating wage and hour class actions and "is regarded as one of the leading private plaintiff's firms in wage and hour class actions and employment class actions." (Dkt. 149-1 [Declaration of Carolyn Hunt Cottrell, hereinafter "Cottrell Decl."] ¶¶ 8–9.) Reflecting this experience, counsel obtained conditional collective certification, and also defeated Defendant's motion for default judgment against Collective Members who failed to participate in discovery. *See Hameed-Bolden v. Forever 21 Retail, Inc.*, 2021 WL 5107729, at *5 (C.D. Cal. Sept. 27, 2021) (considering in adequacy analysis the fact that "counsel's efforts resulted in the case surviving – at least mostly – a motion to dismiss"). This factor weighs in favor of approving the settlement.

### b. Arm's Length Negotiations

The Settlement Agreement was also negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). This factor reflects a "procedural concern[ ], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. The parties reached the Settlement Agreement after a full-day mediation, with extensive discussions after the mediation. (*See* Cottrell Decl. ¶ 24.) By the time the settlement was reached, the parties had engaged in significant discovery, motions practice, and other litigation, and were nearly ready for trial. (*See id.*); *Forever 21*, 2021 WL 5107729, at *5 (considering in analysis of this factor the fact that "the parties engaged in at least some measure of informal discovery prior to mediation"); *Silveira v. M&T Bank*, 2021 WL 2403157, at *5 (C.D. Cal. May 6, 2021) (concluding that this factor weighed in favor of approval when "[t]he parties thoroughly investigated their claims and engaged in two full-day, in-person mediations before a respected retired judge"); *Martinez v. Helzberg's Diamond Shops*, 2021 WL 4730914, at *7 (C.D. Cal. Apr. 12, 2021) ("The time and effort spent on settlement negotiations, as well as mediation with Mr. Pearl, are evidence that the settlement was not collusive and thus weigh in favor of preliminary approval of the Settlement Agreement."). This factor also weighs in favor of approving the settlement.

### c. Equitable Treatment

The Settlement Agreement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). The agreement describes a process for calculating individual settlement payments based on the number of weeks worked by each Collective Member during the settlement period. (Settlement Agreement at 9 § VII.) This is a fair way to divide the settlement proceeds, as it ensures that those who worked more (and thereby suffered more injury due to Defendant's alleged conduct) recover more. This factor also

weighs in favor of approving the settlement. *See McClure v. Waveland Servs., Inc.*, 2021 WL 5204151, at *4 (E.D. Cal. Nov. 9, 2021) (finding equitable treatment in FLSA settlement when the amount each member received was "determined by the number of weeks each worked for defendant"); *In Re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *2 (C.D. Cal. Feb. 18, 2021) (concluding that this factor favored approving the settlement when "there [was] no indication that the settlement favors certain members over others").[1]

### 2. Totality of the Circumstances Approach

#### a. Plaintiff's Range of Possible Recovery

"A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. "The settlement amount need not represent a specific percentage of the maximum possible recovery," but rather "in comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented." *Id.*

The settlement amount is fair and reasonable given Plaintiff and the collective's range of possible recovery. Plaintiff and the collective could have recovered $10,310,972 if they recovered fully for two hours of overtime per week with a three-year statute of limitations (which would have required Plaintiff to show that Defendant acted willfully). (Mot. at 10; Cottrell Decl. ¶ 33.) And they could have recovered $6,200,000 if a two-

---

[1] Because the Court's analysis of whether the relief provided for the class is adequate under Rule 23(e)(2)(C) is encompassed by the Court's analysis under the totality of the circumstances approach, the Court does not perform a separate analysis under Rule 23(e)(2)(C).

year statute of limitations applied (if Plaintiff could not show Defendant acted willfully). (*Id.*)  The $2,350,000 settlement amount represents 23% of the possible recovery with a three-year statute of limitations and 38% of the possible recovery with a two-year statute of limitations.  This percentage is fair and reasonable under the circumstances of this case, especially given the risks Plaintiff and the collective faced with continued litigation.  As noted, there remain disputes over whether Plaintiff and Collective Members performed off-the-clock work, how much off-the-clock work they performed, whether they could prove they performed such work, whether they could prove that Defendant acted willfully, and the application of the *de minimis* doctrine.  Instead of requiring Plaintiff and the collective to face these risks, and potentially recover nothing, the settlement provides certain, immediate relief to Plaintiff and Collective Members.

This percentage is also within the range that courts in this Circuit have found to be fair and reasonable.  *See, e.g., Lopez v. Americold Logistics, LLC*, 2021 WL 4553873, at *4 (E.D. Cal. Oct. 5, 2021) (approving FLSA settlement providing 28% recovery); *Saleh v. Valbin Corp.*, 2018 WL 6002320, at *3 (N.D. Cal. Nov. 15, 2018) (approving FLSA settlement providing between 18.87% and 37.74% of possible recovery, depending on whether liquidated damages were assessed); *Selk*, 159 F. Supp. 3d at 1175 (approving FLSA settlement providing "between 26% to 50% of the best possible recovery").

The average recovery for each Opt-In Plaintiff also reflects the reasonableness of the settlement.  Although the ultimate payout will vary depending on the number of weeks worked in the statutory period (*see* Settlement Agreement at 9 § VII), Collective Members will recover an average of $1,973.68.  (Mot. at 10; Cottrell Decl. ¶ 44.)  This is a substantial payment, representing approximately 44 hours of overtime work.  (*See* Compl. ¶ 24 [alleging that CSWs are paid between $25 and $35 per hour]; Cottrell Decl. ¶ 30 [explaining that the "weighted average rate of pay was approximately $30.42"].)

### b. Stage of Proceedings and Amount of Discovery Completed

The late stage of these proceedings and the amount of discovery completed also indicate that the settlement amount is fair and reasonable. The case was nearing trial before the parties agreed to settle. (Cottrell Decl. ¶ 24.) By the time they reached the Settlement Agreement, the parties had engaged in extensive discovery, including discovery on Opt-In Plaintiffs. (*Id.* ¶ 23.) Plaintiff took 5 depositions, including the deposition of Defendant's corporate representative. (*Id.*) Defendant deposed Plaintiff and more than 20 of the Opt-In Plaintiffs. (*Id.*) And the parties exchanged thousands of pages of documents in written discovery, with Defendant producing 125,905 pages of documents. (*Id.*)

The parties also had the benefit of significant motions practice. Specifically, the Court had granted a vigorously opposed motion for certification, and also denied Defendant's motion for default judgment against CSWs who did not timely participate in discovery. It had also ruled on motions to compel from both parties.

Given the late stage of proceedings and the extensive discovery conducted, the Court finds that the parties had "an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177; *see Jennings*, 2018 WL 4773057, at *5 (finding that this factor weighed in favor of approval when the case had been pending for 3 years, multiple motions had been filed and resolved, the parties had engaged in significant discovery, and the parties participated in a full-day mediation).

### c. Litigation Risks the Parties Faced

The seriousness of the litigation risks the parties faced also weighs in favor of approval. First, "Plaintiff recognized that maintaining conditional certification would

present a significant obstacle." (Cottrell Decl. ¶ 26.) This is because Plaintiff and the Collective Members worked at several different locations around the County, under differing supervisors and managers, and the nature and amount of work and indirect pressures to work unpaid time could have varied between CSWs and between locations. (*Id.* ¶¶ 26–27; Mot. at 12–13.) Second, even if the collective remained certified, it would have faced difficulty proving damages given not only differences between CSWs' circumstances but also the lack of documentary evidence regarding off-the-clock time, which was generally not logged or tracked. (Cottrell Decl. ¶ 28.) Indeed, Defendant has consistently argued that there was no common policy, plan, or practice instructing CSWs to underreport or not report their hours. (Mot. at 13.) There was also evidence that DCFS had implemented a corrective action plan and enacted remedial and prophylactic measures after a previous FLSA collective action settlement, further complicating Plaintiff and the collective's ability to prove liability and damages. (Cottrell Decl. ¶ 28.) These risks indicate that "there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all." *Jennings*, 2018 WL 4773057, at *5 (internal citation omitted); *see Selk*, 159 F. Supp. 3d at 1175 (finding that this factor weighed in favor of approval when there was a strong argument that the defendant had not violated the FLSA and a "real possibility that Defendant would successfully decertify one or both of the classes").

### d. Scope of the Settlement Agreement's Release Provision

A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself. *Slezak v. City of Palo Alto*, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017). Indeed, courts "routinely reject FLSA settlements when the scope of the release goes beyond the overtime claims asserted in the complaint." *Dunn*, 2016 WL 153266, at *5. The goal is to "ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178.

The Settlement Agreement's release is limited to the FLSA claims asserted in this case. (Mot. at 14.) Specifically, Plaintiff and Opt-In Plaintiffs agree to release claims "arising from the facts and claims asserted in the Operative Complaint" including claims for failure to pay minimum wage, failure to pay for all hours worked, or any claim involving off-the-clock work. (Settlement Agreement at 6 ¶ T.) This factor therefore weighs in favor of approval.

### e. Counsel's Experience and Views and Participating Plaintiffs' Opinion

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 WL 2688224, at *5 (cleaned up). "As the Ninth Circuit has emphasized, parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Selk*, 159 F. Supp. 3d at 1176 (cleaned up).

As noted, counsel for Plaintiff and the collective has nearly three decades of experience litigating wage and hour class actions and "is regarded as one of the leading private plaintiff's firms in wage and hour class actions and employment class actions." (Cottrell Decl. ¶¶ 8–9.) Defendant is likewise represented by experienced litigators. Counsel believe that the settlement amounts are fair and reasonable, especially given their potential damages calculations and the risks of future litigation. Moreover, the lack of objections by Collective Members, and the fact that more than 700 opted in to the settlement, also weighs in favor of finding the settlement fair and reasonable. *See Selk*, 159 F. Supp. 3d at 1176; *Slezak*, 2017 WL 2688224, at *5; *Jennings*, 2018 WL 4773057, at *8.

### f. Attorney Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180 (citing 29 U.S.C. § 216(b) [providing that, in a FLSA action, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"]). The Settlement Agreement provides that class counsel may seek attorney fees of up to one-third of the settlement, or $775,500. (Settlement Agreement at 1 ¶ D.)

When a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to calculate reasonable attorney fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942–43 (9th Cir. 2011). The amount of fees awarded rests ultimately in the court's sound discretion. *Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The Court applies the percentage-of-recovery method here. The Ninth Circuit has held that 25% of the fund is the "benchmark" for a reasonable fee award, and courts must provide adequate explanation in the record of any "special circumstances" to justify a departure from this benchmark. *Bluetooth*, 654 F.3d at 942–43; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent. That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in this case." (internal citation omitted)). In considering whether there are any "special circumstances" warranting a departure from the benchmark, courts consider (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the

financial burden carried by the Plaintiff, and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Plaintiff's counsel seek 33.3% of the settlement fund. They contend that this upward departure from the benchmark is warranted due to the results achieved in the settlement, their perseverance against the risks they faced in litigation, the skill they have demonstrated, the fact that they took on this litigation on a contingency fee basis, and based on awards made in other FLSA cases. (Mot. at 16–21.)

After considering these factors, the Court finds that a 25% fee award here is both fair and reasonable. The Court is not persuaded that the results achieved in settlement, the risk of the litigation, or the skill required are sufficiently different from the ordinary case to warrant a departure from the benchmark. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897–98 (9th Cir. 2017) (affirming 25% benchmark fee award where "[t]here were no special circumstances here indicating that the 25% benchmark award was either too small or too large"). The contingent nature of the fee does not change the Court's reasoning. Accordingly, the Court will award $587,500 in attorney fees.

Plaintiff's counsel also provide the Court with the information necessary to perform a "lodestar cross-check." Courts commonly perform a lodestar cross-check to assess the reasonableness of a percentage award. *See Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award"). Plaintiff's counsel's lodestar fee is $1,849,365 based on their hours worked and reasonable hourly rates. (Cottrell Decl. ¶ 40.) This confirms the reasonableness of the Court's $587,500 fee award. *See Jennings*, 2018 WL 4773057, at *8 (approving attorney fees of 20% of the total settlement amount where it was "clear

that the amount sought is significantly less than the amount that would be awarded under the lodestar method"); *Selk*, 159 F. Supp. 3d at 1180 (approving attorney fees of 24% of the settlement amount where the lodestar figure was more than 11 times greater than the amount of fees provided under a benchmark approach).

Turning to costs, the Settlement Agreement provides that "[t]he costs requested to be reimbursed by Collective Counsel will not exceed $100,000." (Settlement Agreement at 1 ¶ D; *id.* at 8 § III.) Nevertheless, collective counsel states that it has incurred costs of $151,828.53 in this case and seeks reimbursement of that amount. (Mot. at 5; Cottrell Decl. ¶¶ 41, 75.) They argue that reimbursing that amount is appropriate because costs were less than $100,000 when the parties were drafting the Settlement Agreement, but Plaintiff had to incur additional costs as the case has progressed. Although the Settlement Agreement gives Defendant the right to oppose counsel's request for costs above the agreed-upon $100,000, (*see* Settlement Agreement at 8 § 3), Defendant does not oppose the request.

The Court will award the full amount of costs incurred. "[A]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non contingency matters." *Cunha v. Hansen Nat. Corp.*, 2015 WL 12697627, at *5 (C.D. Cal. Jan. 29, 2015) (awarding $318,207 in costs). The out-of-pocket expenditures for which counsel seeks reimbursement—which are for mediation, over 20 depositions, several hearings, storage of thousands of digital documents, computerized legal research, travel expenses, copying and printing costs, monthly website hosting costs for putative opt-ins, and other case related costs—appear to be reasonable and of the sort that would typically be billed to paying clients. (*See* Cottrell Decl. ¶ 41.)

//

### g. The Possibility of Fraud or Collusion

In assessing whether there is the possibility of fraud or collusion, courts often look to considerations the Ninth Circuit highlighted in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *Jennings*, 2018 WL 4773057, at *8; *Selk*, 159 F. Supp. 3d at 1180; *Slezak*, 2017 WL 2688224, at *5. In that case, the Circuit explained that courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947; *see Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019); *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). Those signs include (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney fee, and (3) when the agreement contains a "kicker" or "reverter" clause that returns unclaimed funds to the defendant rather than to the class. *Bluetooth*, 654 F.3d at 947; *Roes,* 944 F.3d at 1060; *Briseño*, 998 F.3d at 1023. The Ninth Circuit has been careful to explain that these are just signs of *possible* collusion, not automatic bases for rejection of a settlement. *Briseño*, 998 F.3d at 1027. When they are present, courts must scrutinize the settlement even closer to look for signs that self-interest, even if not purposeful collusion, has seeped its way into the settlement terms. *Roes,* 944 F.3d at 1060.

Here, counsel does not receive a disproportionate distribution of the settlement. Indeed, the Court awards the *Bluetooth* benchmark in fees. Nor is there any concern with the Settlement Agreement's reverter clause because it gives any excess funds to Collective Members, not Defendant. (Settlement Agreement at 1 ¶ D ["If the attorneys' fees and costs awarded by the Court are a reduced amount, then the difference between

the amount set forth above and the reduced attorneys' fees and costs awarded shall be distributed pro-rata to Participating Collective Members."].)

The only term that could possibly indicate collusion is the clear sailing agreement. (Settlement Agreement at 1 ¶ D ["Defendant has agreed not to oppose Collective Counsel's request for attorneys' fees and costs as set forth above."]; *id.* at 8 § III ["Defendant agrees not to oppose or impede any application by Collective Counsel for attorneys' fees of not more than $775,500."].) Clear sailing provisions are disfavored because they deprive the court of the advantages of the adversary process in resolving fee determinations. *Roes*, 944 F.3d at 1050–51; *see McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021). The concern is that such a provision "increases the likelihood that class counsel will have bargained away something of value to the class." *Roes*, 944 F.3d at 1050–51. However, the presence of a clear-sailing provision is not a "death knell." *McKinney-Drobnis*, 16 F.4th at 610; *see Roes*, 944 F.3d at 1050–51 (explaining that such provisions are not prohibited). Rather, when faced with such a provision, courts have a "heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Briseño*, 998 F.3d at 1027.

The Court has closely scrutinized the relationship between attorney fees and the benefit to the class, and concludes that the fees it awards—the 25% benchmark—are not unreasonably high. *See Briseño*, 998 F.3d at 1027. The class receives a significant benefit from this settlement, and collective counsel does not receive a disproportionate distribution of the settlement. Moreover, even though fees and costs were uncontested, the Court has not awarded collective counsel the full amount of fees sought. In sum, the Court finds no evidence that the Settlement Agreement resulted from, or was influenced by, fraud or collusion.

### h. Settlement Administration Costs

The Settlement Agreement provides that "Claims Administration Costs will be paid from the Collective Settlement Amount." (Settlement Agreement at 2 ¶ E.) It states that such costs "are currently estimated to be $20,000" but if "actual Claims Administrations Costs are greater than $20,000, such excess amount will be deducted from the Collective Settlement Amount, subject to Court approval." (*Id.*) Collective counsel states that settlement administration costs are currently estimated to be $20,040, such that $40 would be subtracted from the net settlement amount. (Cottrell Decl. ¶ 43.) The Court will award the $20,000 in claims administration costs set forth in the Settlement Agreement.

### i. Incentive Awards

The Settlement Agreement provides that "Plaintiff will request Court approval of Collective Representative Incentive Awards of $15,000 for Plaintiff Judith Zissa and $10,000 for Opt-In Plaintiff Jesus Gonzales. Defendant has agreed not to oppose these amounts." (Settlement Agreement at 3 ¶ K.) "At its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181. In determining whether an incentive award is appropriate, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

Counsel declares that a $15,000 award for Plaintiff is appropriate because she "took the significant risk of coming forward to represent the interests of her fellow employees." (Cottrell Decl. ¶ 56.) She also worked with counsel throughout every stage

of this case, provided extensive information and documents, was deposed, responded to discovery, and produced 1,446 pages of documents. (*Id.* ¶¶ 57–62.) Counsel declares that a $10,000 award is appropriate for Opt-In Plaintiff Gonzales because he spent significant time with counsel developing this case, gave counsel "especially critical" documents detailing aspects of Plaintiff's claims, produced 462 documents in written discovery, was deposed, and also took a risk in filing and prosecuting this action. (*Id.* ¶¶ 64–69.)

Plaintiff and Opt-In Plaintiff Gonzales seek a larger incentive award than what is typical. Incentive awards typically range from $2,000 to $10,000. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases); *see In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (explaining that California district courts typically approve incentive awards between $3,000 and $5,000). A $5,000 payment is "presumptively reasonable." *Bellinghausen*, 306 F.R.D. at 266.

The Court does not question that Plaintiff and Opt-In Plaintiff Gonzales took significant risk and expended significant and valuable effort participating in this case. However, the Court is not persuaded that the evidence presented justifies awarding Plaintiff an incentive award three times the typical award and Opt-In Plaintiff Gonzales a double award. *See McClure v. Waveland Servs., Inc.*, 2021 WL 5204151, at *3 (E.D. Cal. Nov. 9, 2021) (approving $5,800 requested service award in connection with FLSA settlement); *Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *7 (N.D. Cal. Sept. 10, 2021) (finding requested service awards of $7,000 to be reasonable); *see also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (finding an incentive payment of $12,500.00 excessive, and instead awarding $7,500). Accordingly, the Court will approve a $10,000 incentive award—the high end

of what is typical—for Plaintiff, and a $5,000 incentive award for Opt-In Plaintiff Gonzales.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for approval of this FLSA collective action settlement is **GRANTED IN SUBSTANTIAL PART**.  The Court approves the settlement with the following changes: the Court awards $587,500 in attorney fees and $151,828.53 in costs for collective counsel, settlement administration costs of $20,000, and incentive payments of $10,000 to Plaintiff and $5,000 to Opt-In Plaintiff Gonzales.

DATED:     December 21, 2021

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

CC: FISCAL